## W. II. WILKINSON v. W. H. DUNBAR.

(Filed 5 November, 1908).

**1. Contracts, Breach of—Damages Present and Prospective—Procedure.**

When there has been a definite and absolute breach of a contract which is single and entire, all damages, both present and prospective, suffered by the injured party, may and usually must be recovered in one and the same action.

**2. Contracts, Breach of—Prospective Profits, When Recoverable.**

When prospective damages are allowed to the injured party as arising under a breach of contract, they must be such as are in reasonable contemplation of the parties and capable of being ascertained with a reasonable degree of certainty; and while profits prevented are frequently held to be excluded, they are those expected by reason of collateral engagements, or dependent to a great extent on the uncertainty of a trade and fluctuations of the market.

**3. Contracts, Breach of—Prospective Profits, How Estimated.**

When an injured party to a contract is entitled to recover prospective damages, proper allowance should be made for the fact that recovery is had for damages that would have accrued at a future time, and the Courts and juries should see that such is made for those fluctuations, which are likely to occur. Where, however, the recovery is for the cutting and delivery at a certain price of several millions of feet of timber, a contract requiring years in its performance beyond the time when the breach was established, it was error in the trial Judge to instruct the jury, generally, that the measure of damages was the difference between the amount to be paid for the work and the cost of performance. This is correct as to damages already accrued, but, as to those to arise in the future, the rule should be the present value of such damages.

**4. Contracts—Prospective Profits—Contemplation of Parties.**

Prospective profits are advantages which are the direct and immediate fruits of the contract entered into between the parties, are a part and parcel of the contract, and presumed to have been taken into consideration at the time it was made.

**5. Witnesses—Expert Testimony as to Facts.**

Witnesses shown to be familiar with the tract of land, and lumbermen of experience having personal knowledge of the facts and conditions, may give their opinion as to the cost of cutting and

delivering timber, and the profits per thousand feet, when the same is relevant to the inquiry in a suit for damages arising from a breach of contract.

ACTION tried before *O. H. Allen, J.,* and a jury, Fall Term, 1907, of HYDE.

Plaintiff instituted suit against defendant, and declared on four causes of action for alleged breach of different contracts on part of defendant, claiming damages therefor in amounts varying from $500 to $100. Defendant answered denying the allegations of the complaint, and alleging, by way of counterclaim, breach of contract on part of plaintiff, under which plaintiff had contracted and agreed to pay defendant $3.50 per thousand feet to cut and haul the timber from two certain tracts of land, the timber amounting to several million feet. Plaintiff replied denying the alleged counterclaim. On issues submitted, there was a verdict for plaintiff on his first cause of action, the jury assessing plaintiff's damages at $428.99 with interest from 19 May, 1902. And there was verdict for defendant on his counterclaim for $4,000. Objection was made to the ruling of the Court, which allowed defendant and some other witnesses, known to be familiar with the tract of land, and lumbermen of experience, to give their opinion as to the cost of cutting the timber and delivering same to the tug-boat pursuant to the stipulations of the contract, and the profit per thousand feet to accrue according to the contract price.

Exceptions were also made to allowing the jury to award prospective damages, the plaintiff contending that, under the terms of the contract and the attendant facts and circumstances, these damages were too indefinite and uncertain to be made the basis of legal demand, and excepting, further, to the rule laid down by the Court under which such damages were to be admeasured.

There was judgment on the verdict for defendant and plaintiff excepted and appealed.

*S. S. Mann* and *Small, MacLean & McMullen* for plaintiff.
*Ward & Grimes* and *W. M. Bond* for defendant.

HOKE, J., after stating the case: It was chiefly objected to the validity of defendant's recovery, that the profits of the contract claimed and allowed as damages, on defendant's counterclaim, involved too many elements of uncertainty to be made the basis of a legal award of prospective damages, and the same should have been rejected, on the ground that they are "speculative" and "contingent," but we are of opinion that the objection cannot be sustained.

It is well established, that where there has been definite and absolute breach of a contract which is single and entire, that all damages, both present and prospective, suffered by the injured party, may and usually must be recovered in one and the same action, and, when prospective damages are allowed, they must be such as were in reasonable contemplation of the parties, and capable of being ascertained with a reasonable degree of certainty. This requirement as to the certainty of damages recoverable is frequently said to exclude the idea of profits, but this statement must be understood to refer to the profits expected by reason of collateral engagements of the parties, or the profits of a going concern to arise from current sales and bargains which are yet to be made and dependent, to a great extent, on the uncertainty of trade and fluctuations of the market. Accordingly, it has been held that profits of an old established business may sometimes be allowed as damages, when they can be ascertained with a reasonable degree of certainty, and, under like circumstance, the prospective profits to arise from the contract declared on are also recoverable.

The doctrine is stated in Hale on Damages as follows: "In an action for damages, the plaintiff must prove, as part of his case, both the amount and the cause of his loss. Absolute certainty, however, is not required, but both the cause

and the amount of the loss must be shown with reasonable certainty. Substantial damages may be recovered though plaintiff can only give his loss proximately." Hale on Damages, p. 70; quoted with approval by this Court in *Bowen v. Harriss,* 148 N. C. And further, on p. 71: "A difficulty arises, however, where compensation is claimed for prospective losses in the nature of gains prevented—but absolute certainty is not required. Compensation for prospective losses may be recovered when they are such, as in the ordinary course of things, are reasonably certain to ensue. Reasonable means reasonable probability. Where the losses claimed are contingent, speculative, or merely possible, they cannot be allowed." On this subject, the same author, pp. 72 and 73, quotes with approval from the opinion of *Selden, J.,* delivered in the case of *Griffin v. Colver,* 16 N. Y., 489, 491, as follows: "It is a well established rule of the common law that damages recoverable for a breach of contract must be shown with certainty, and not left to speculation or conjecture; and it is under this rule that profits are excluded from the estimate of damages in such cases, and not because there is anything in their nature which should *per se* prevent their allowance. Profits which would certainly have been realized but for the defendant's fault are recoverable; those which are speculative and contingent, are not. The broad general rule in such cases is that the party injured is entitled to recover all his damages, including gains prevented as well as losses sustained; and this rule is subject to but two conditions: The damages must be such as may fairly be supposed to have entered into the contemplation of the parties when they made the contract, that is, must be such as might naturally be expected to follow its violation; and they must be certain, both in their nature and in respect to the cause from which they proceed." And Sutherland on Damages, speaking on this subject, says: "It is not necessary that such damages shall be shown with mathematical accuracy." The same

principle is well stated by Chief Justice Nelson in the notable case of *Masterton v. Mayor,* 7 Hill, p. 61, as follows: "When the books and cases speak of the profits anticipated from a good bargain as matters too remote and uncertain to be taken into the account in ascertaining the true measure of damages, they usually have reference to dependent and collateral engagements entered into on the faith and in expectation of the performance of the principal contract. The performance or non-performance of the latter may, and doubtless often does, exert a material influence upon the collateral enterprises of the party; and the same may be said as to his general affairs and business transactions. But the influence is altogether too remote and subtle to be reached by legal proof or judicial investigation. And, besides, the consequences, when injurious, are as often, perhaps, attributable to the indiscretion and fault of the party himself, as to the conduct of the delinquent contractor. His condition, in respect to the measure of damages, ought not to be worse for having failed in his engagement to a person whose affairs were embarrassed, than if it had been made with one in prosperous or affluent circumstances. Dom., b. 3, tit. 5, 2, Art. 4."

But profits or advantages which are the direct and immediate fruits of the contract entered into between the parties, stand upon a different footing. These are part and parcel of the contract itself, entering into and constituting a portion of its very elements; something stipulated for, the right to the enjoyment of which is just as clear and plain as to the fulfillment of any other stipulation. They are presumed to have been taken into consideration and deliberated upon before the contract was made, and formed, perhaps, the only inducement to the arrangement. The parties may indeed have entertained different opinions concerning the advantages of the bargain, each supposing and believing that he had the best of it; but this is mere matter of judgment going to the formation of the contract, for which each has shown himself

willing to take the responsibility, and must, therefore, abide the hazard.

Such being the relative position of the contracting parties, it is difficult to comprehend why, in case one party has deprived the other of the gains or profits of the contract by refusing to perform it, this loss should not constitute a proper item in estimating the damages.

The doctrine so clearly defined and stated by these authorities, is approved and applied in decisions of our own Court, and well-considered cases in other jurisdiction. *Oldham v. Kerchner,* 79 N. C., 106; *Hinckley v. Steel Co.,* 121 U. S., 264; *Fail and Mills v. McRee,* 36 Ala., 61; *Nelson v. Morse,* 52 Wis., pp. 240-255; *Richmond & Jackson v. R. R.,* 40 Iowa, 264-277.

A proper application of these principles to the facts presented fully support the ruling of his Honor below, in submitting the question of prospective damages for the consideration of the jury, these facts affording all the data for an award of such damages with reasonable certainty. While we agree with his Honor that for breach of this contract, recovery for both present and prospective damages is permissible, we are of opinion that there was error to the plaintiff's prejudice in the rule by which a substantial portion of the damages was directed to be ascertained. On this question his Honor charged the jury, that in case a breach of contract was established, as claimed, the defendant was entitled to recover as damages the difference between the amount the plaintiff had agreed to pay for the work and the cost of performance. This was the entire statement of the trial Judge in reference to the rule by which the damages should be admeasured, and though somewhat general in its terms, is a correct rule as to all the damages which had been occasioned at the time of breach; but there was evidence offered tending to show that this contract would have required some years in its performance beyond the time when a breach was established, and, as

to this prospective damage, that to arise in the time required for performance after such breach, the correct rule would be the present value of the difference between the contract price and the cost of performance. We hold, as stated, that recovery for this prospective damage can be had, but defendant is only entitled to the present value of his contract, and, in so far as such damage is allowed by anticipation, proper allowance should be made for the fact that present recovery is had for damage that would only have accrued at a future time. This position as to the correct rule for determining values to arise and accrue in the future, when a present recovery is allowable, is very well illustrated in the case of *Pickett v. R. R.,* 117 N. C., 616. In that case, and on the question indicated, it was held: "7. In an action for a negligent killing, an instruction that the expectation of one seventeen years old would be forty-four and two-tenth years, and that the measure of damages would be the net moneyed value of intestate's life to those dependent on him had he lived out his appointed time, is erroneous, because it leaves uncertain the date which should be the basis of the final calculation, instead of informing the jury that it is the present value of such net moneyed value which should be considered."

And while the authorities hold that one recovery is to be had for the entire damage, predicated on values as they existed at the time of the breach of the contract, and that it is error to admit testimony as to actual changes in the market values or the cost of labor and material that may arise after that date, see *Hawk v. Lumber Co., ante,* we deem it not amiss to say that competent witnesses who speak to this question, should always be sufficiently advertent to the fact that such fluctuations are not unlikely to occur, and Courts and juries should be careful to see that proper allowance is made on that account in fixing the amount of a present recovery, by reason of such damage.

Speaking to this question, and in support of the view that the principle referred to is of the substance and to be given its proper weight by the jury, *Nelson, Chief Justice,* in *Masterton's Case, supra,* said:

"The constituent elements of the cost should be ascertained from sound and reliable sources; from practical men, having experience in the particular department of labor to which the contract relates. It is a very easy matter to figure out large profits upon paper, but it will be found that these, in a great majority of the cases, become seriously reduced when subjected to the contingencies and hazards incident to actual performance. A jury should scrutinize with care and watchfulness any speculative or conjectural account of the cost of furnishing the article that would result in a very unequal bargain between the parties, by which the gains and benefits, or, in other words, the measure of damages against the defendants are unreasonably enhanced. They should not overlook the risks and contingencies which are almost inseperable from the execution of contracts like the one in question, and which increase the expense independently of the outlays in labor and capital."

Objection was further made that the defendant and other witnesses were allowed to give to the jury their opinion of the profits per thousand feet. These witnesses, or some of them, had given their statement and estimate of the cost per thousand feet to cut and haul and deliver these logs at a point where the tug-boat could get them, and the testimony objected to, while in the form of an opinion, was nothing but an estimate by them of the difference between the costs of performance and the contract price, making their testimony nothing really but an estimate of value, and thus bringing the same clearly within the general rule by which opinion evidence is available. Sedgwick Damages, sec. 1294.

But, apart from this, it will be noted that the witnesses who gave this testimony had personal observation and knowl-

edge of the facts and conditions, and they were all said to be experienced lumbermen.    Testimony of this kind, from such a source, is coming to be more and more allowed in investigations of this character, and the Courts are disposed to admit "opinion evidence" when the witnesses have had personal observation of the facts and conditions, and from their practical training and experience are in a condition to aid the jury to a correct conclusion.    While not expert testimony in the strict sense of the word, it is coming to have a recognized place in the law of evidence.

McKelvey speaks of it as "expert testimony as to facts." McKelvey on Evidence, p. 230, and, in reference to it, this author says that it is nothing more than ordinary testimony as to facts given by witnesses specially qualified by observation and experience to give it.    And, further, on p. 231: "There are two classes of witnesses who are ordinarily spoken of as experts. . The one embraces those persons who, by reason of special opportunity for observation, are in a position to judge of the nature and effect of certain matters better than persons who have not had opportunity for like observation.    For example, one who has had opportunity to observe the running of trains may testify as to the speed of an ordinary train.    Such witnesses are really not experts in the strict sense of the term; they are only specially qualified witnesses.    Any person, having been placed in the same position, and having had the same opportunity for observation, could give like testimony."

The testimony offered comes clearly within this principle, and its admission has been sanctioned by authoritative decisions here and elsewhere.    *Britt v. R. R.,* 148 N. C.; *Taylor v. Security Co.,* 145 N. C., 385; *Sikes v. Paine,* 32 N. C., 280; *Eldridge v. Smith et al,* 95 Mass., 140; *Salvo v. Duncan et al,* 49 Wis., 151-157; *Stark v. Alford,* 49 Tex., 261.

The question of plaintiff's liability and the amount of recovery were submitted to the jury in one and the same

issue, and for the error indicated in the opinion, a new trial is directed on the entire issue.

New trial.