GEORGE F. HARPER v. TOWN OF LENOIR.

(Filed 27 May, 1910.)

1. Cities and Towns—Streets—Grading—Lateral Support — Negligence.

When changing the grade of an existing street under the proper authorities of a town involves an excavation of 12 or 14 feet, and leaves the plaintiff's property abutting on an embankment of the height nearly perpendicular, with a soil showing a tendency to crumble away, a rotten, ashy kind of soil with a "good deal of isinglass," having no body, which will not stand as left after the excavation, a failure to provide a support for it is evidence of actionable negligence on the part of the town in doing the work, for which, if established, the plaintiff may recover damages.

2. Cities and Towns—Pleadings—Allegations — Injunctions — Negligence—Amendments—Procedure—Equity—Damages.

When a complaint alleging negligence in the town authorities for leaving plaintiff's abutting property unsupported after grading down the street, is used for the purpose of an affidavit in applying to the courts for a restraining order, it is not error in the trial judge to permit plaintiff to amend so as to allege damages arising from the negligent act complained of. Under the old system an award of damages was not infrequently allowed as an incident to some recognized ground of equitable relief, and this is undoubtedly true under our present procedure, which combines legal and equitable actions in one and the same jurisdiction and permits the joinder of "all causes of action arising out of the same transaction," etc.    (Revisal, sec. 469.)

3. Cities and Towns — Streets — Grading — Lateral Support—Negligence—Damages.

The doctrine that the withdrawal of lateral support to adjoining lands is not actionable until damage accrues, and to the extent it has accrued, does not apply to further grading of an established street done under statutory authority. In such case an action lies only in case the work is negligently done and damages are awarded which are properly attributable to such negligence.

4. Cities and Towns—Streets—Grading — Negligence — Measure of Damages.

The work being done under statutory authority, and the injury regarded as permanent in its nature, the proper rule for the admeasurement of damages is the impaired market value of the property arising and likely to arise by reason of the negligence established, determined on consideration of the entire damages from the wrong—past, present and prospective.

5. Same—Supporting Walls—Cost—Evidence.

In an action for damages against a town for negligently leaving plaintiff's abutting land, elevated by reason of grading down a street, insecure and unsupported, evidence of the cost of a retaining wall is competent as a fact relevant to the inquiry

as to the amount of permanent damages recoverable, and under some circumstances might be adopted as determinative, particularly when such cost is reasonable and operates in restriction of the amount demanded.

6. Cities and Towns—Streets—Grading—Damages—Experts Upon the Facts—Evidence—Tax Value—Relevant Circumstances.

In an action for damages to plaintiff's abutting land caused by the negligence of defendant town in lowering a street in grading it, opinions of witnesses who have had a personal observation of relevant facts and conditions, and whose opinions are calculated to aid the jury in coming to a correct conclusion, are competent.

APPEAL from Councill, J., at November Term, 1909, of CALD-WELL.

There was evidence tending to show that the plaintiff was the owner of a house and lot in the town of Lenoir, abutting on Main Street, and also on north Boundary Street; that the authorities of the town in charge of the matter, having determined on a change of grade of these streets, proceeded to dig down and lower Main Street, leaving plaintiff's property twelve or fifteen feet above the level of the sidewalk, and were about to commence like action on north Boundary Street, when plaintiff instituted the present suit.

While the record does not make the matter very clear as to what was the original purpose of the action, nor what part of the digging took place or damage was caused before the same was commenced, it seems to have been admitted on the argument that the suit was instituted to restrain the authorities from going on with the work complained of, and that this having being stopped, no restraining order was issued and the suit was proceeded with without process of that character, and was tried on an issue as to negligence. It appears to have been further conceded that the change of grade along Main Street had been completed before suit commenced, but that some of the consequential damages had occurred from it since action brought, and evidence as to all such damage was admitted over defendant's objection. The original complaint, evidently drawn with a view of using same also as an affidavit on the hearing of an application for a restraining order, contained allegations of carelessness in the work on the part of the defendant, and was filed at the return term in 1908, and answer was then filed by defendant denying all material averments. At the trial term, in November, 1909, plaintiff was allowed, over defendant's objection, to amend his complaint, making a more extended and specific allegation of negligence on the part of defendant in doing the work complained of, and amended answer was then filed by defendant.

There was evidence on part of plaintiff tending to show injury to the plaintiff's property by reason of alleged negligence, causing substantial damage to same, part of this damage occurring before commencement of the suit; and to all evidence tending to show damages subsequently occurring, defendant objected and properly filed exceptions.

On issues submitted, the jury rendered the following verdict:

1. Did the defendant have authority under the law to lower the grade of north Main Street in the town of Lenoir, and to remove earth therefrom up to the line of the plaintiff's property? Answer: Yes.

2. Was the plaintiff's property injured by the negligence of the defendant, as alleged in the complaint? Answer: Yes.

3. What damage, if any, is plaintiff entitled to recover? Answer: $800.

Judgment on verdict for plaintiff, and defendant excepted and appealed.

*George W. Wilson, W. C. Newland* and *Lawrence Wakefield* for plaintiff.

*W. A. Self* and *Mark Squires* for defendant.

HOKE, J., after stating the case: On the issue as to defendant's responsibility, the court below, among other things, charged the jury as follows:

"Cities and towns have the right to improve streets and pavements for the public good, and in the exercise of this right may grade down streets and pavements to a lower or make them of greater elevation than the property of adjacent or abutting property owners, and if in doing such work the town or city exercises (*a*) care and skill, that is, does the work properly, (*b*) then if injury results to the adjacent or abutting owners either by leaving their property below or above the grade so made, the property owners are not entitled to recover damages, even though their property is rendered of less value by reason of the work so done. Nor can property owners recover damages under such conditions because of the ingress or egress to their property being interrupted or hindered, nor can they recover because of the effect of such work upon the appearance of their property."

And again:

"Every one who owns real estate in a city or town that adjoins a public street or pavement holds it subject to the right of the city or town to grade such street or pavement down or to elevate it when in the exercise of the judgment of the authorities of the city or town it becomes necessary or advisable to do

so. And where grading is done under such conditions, (*c*) and is done properly, that is, with care and skill, and with due regard to the rights of the property owners, (*d*) then the law affords no protection to the property owners on account of injury to their property resulting from being left at a higher or lower level than the street or pavement, or on account of ingress or egress to such property being affected, or for any injury to the appearance of the property."

This is a very correct statement of the law as it obtains with us, where streets have been already established, and is in accord with numerous decisions of our Court on the subject. *Dorsey v. Henderson,* 148 N. C., 423; *Jones v. Henderson,* 147 N. C., 120; *Wolf v. Pearson,* 114 N. C., 621; *Meares v. Wilmington,* 31 N. C., 73.

Under the charge, and applying this principle, the jury have awarded plaintiff damages for the negligent manner in which this work was done by the town authorities, and unless there is reversible error appearing in the record, the judgment in his favor must be affirmed.

It was objected to the validity of the recovery, that the judge on the issue as to negligence imposed upon the defendant the duty of constructing a retaining wall for the protection of plaintiff's property; but on the facts presented we do not think the position can be sustained. The defendant certainly is not required to build a retaining wall in every case where an excavation of this character is made, nor is the cost of such a wall usually the correct measure of damages; but where, as in this case, the change of grade involves an excavation of 12 or 14 feet, leaving plaintiff's property abutting on an embankment of that height, nearly perpendicular and with a soil showing a tendency to crumble away, "a rotten, ashy kind of soil that has no body, has a good deal of isinglass and mica in it, not a kind of soil that will stand in any such shape as that," we think the court correctly held that proper care required that some kind of proper support should have been provided; and a failure to provide such support was correctly imputed for negligence on the part of the town. This was substantially held in *Meares' case, supra,* and the decision was so interpreted in *Jones' case, supra;* both cases certainly giving decided intimation that the failure to build a retaining wall under the conditions indicated was properly held to be actionable negligence.

It was objected further, on the part of the defendant, that the action having been instituted primarily to obtain an injunction, and before any substantial damages had accrued from the alleged wrong, that the court had no power to allow an amendment demanding damages for a negligent breach of duty on

the part of defendant, the position being that such an amendment amounted to an entire change in the scope and purpose of the action, and constituted reversible error under the authority of *Clendenin v. Turner,* 96 N. C., 421, and that class of cases.

As heretofore stated, it does not necessarily appear that it was the sole purpose of the action to obtain an injunction, and the original complaint contains averments which by correct interpretation amount to a charge of negligence, so that the facts here are against the defendant; but if it were otherwise, the position cannot be sustained. Courts of equity not infrequently award damages when such a demand is incident to some recognized source of equitable relief; and, under our system combining legal and equitable actions in one and the same jurisdiction, and permitting the joinder of "all causes of action arising out of the same transaction or transactions growing out of the same subject of action" (Revisal, sec. 469), it was not only permissible, but eminently proper that the plaintiff should be allowed to amend and claim the damages accrued and which were incident to the principal relief. Beach on Injunctions, sec. 10; Pomeroy's Equity Jurisprudence, secs. 112-237.

Making a short extract from the last citation: "Equity, therefore, assumes a jurisdiction to grant an injunction restraining the commission of actual or threatened waste; and having obtained jurisdiction for the purpose of awarding this special relief, which in many instances is not complete, the court will retain the cause and decree full and final relief, including damages, and, when necessary, an abatement of whatever creates the waste or causes the nuisance."

Again, it was contended that this is an action for withdrawal of lateral support; that such an injury is never considered as an actionable wrong until appreciable damage has actually occurred, and as there was no evidence tending to show any substantial injury to plaintiff's property prior to the commencement of the suit, the recovery cannot be sustained. There seems to have been no more fruitful source of litigation than actions for wrongful withdrawal of lateral support by excavations on the part of an adjoining property owner, and there are many learned discussions in the reported cases on the subject. Considering these cases, it is undoubtedly established by the weight of authority that in actions of this character a claim for damages does not arise until there has been some appreciable injury to plaintiff's property as by an actual subsidence of the soil, and then only to the extent of the injury suffered. *Kansas City R. R. v. Schwake,* 70 Kansas, 141, reported in 68 L. R. A., 673; *Larson v. Street Ry.,* 110 Mo., also reported in 33 Amer. St.

Reports, 330; *Charless v. Rankin,* 22 Mo., 566, in 66 Amer. Decisions, 642, with full and learned notes by the editors of these respective publications.

These decisions, however, cannot avail defendant, for the reason that in the respect suggested the principle upon which they rest does not apply with us to an action against a municipal corporation for damages caused by changing the grade of a street already established. In such case, as heretofore stated, damages can only be recovered if the work is negligently done and to the extent caused by such negligence. And this, too, is the answer to another and kindred · exception noted by defendant to the admission of all testimony as to any damages accruing since action commenced. Recovery, then, being sustainable only for negligence in the case of a pure tort, the damages, as said in *Bowen v. King and Harris,* 146 N. C., at page 390, "will include all that are directly caused by the wrong and all consequential damages which are the natural and probable effect of such wrong, under the facts as they existed at the time the same is committed and which could be ascertained with a reasonable degree of ·certainty." Citing *Johnston v. R. R.,* 140 N. C., 574; *Charpe v. Powell,* 7 L. R., 1892, p. 253; 8 Amer. and Eng. Ency., p. 598; Hale on Damages, 34, 35 *et seq.;* and having been caused by a change of grade done, as a rule, under statutory authority and considered of a permanent nature, under our decisions there may and, ordinarily, must be but one recovery for the entire wrong.

This general principle is well stated by *Justice Avery* in *Ridley v. R. R.,* 118 N. C., 998, as follows:

"But even where the injury complained of, either by the servient owner or an adjacent proprietor, is due to the negligent construction of such public works as railways which it is the policy of the law to encourage, if the injury is permanent and affects the value of the estate, a recovery may be had at law of the entire damages in one action." Citing *Smith v. R. R.,* 23 W. Va., 453; *Troy v. R. R.,* 3 Foster (N. H.), 83; *R. R. v. Maher,* 91 Ill., 312; *Biger v. R. R.,* 70 Iowa, 146; *Fowle v. R. R.,* 112 Mass., 334, 338; *s. c.,* 107 Mass., 352; *R. R. v. Estorle,* 13 Bush (Ky.), 667; *R. R. v. Combs,* 10 Bush (Ky.), 382, 393; *Stodghill v. R. R.,* 53 Iowa, 341; *Cadle v. R. R.,* 44 Iowa, 1.

And is said by Mr. Elliott, in his work on Roads and Streets, to obtain very generally in determining the damages recoverable on a change of grade by the authorities. Speaking to this question, the author said:

"SEC. 488. *All Damages Are Recoverable in One Action.* The change of grade is a permanent matter and all resulting

injury must be recovered for in one action, for the property owner cannot maintain successive actions as each fresh annoyance or injury occurs. The reason for this rule is not far to seek. What is done under color of legislative authority and is of a permanent nature, works an injury as soon as it is done, if not done as the statute requires, and the injury which then accrues is, in legal contemplation,. all that can accrue, for the complainant is not confined to a recovery for past or present damages, but may also recover prospective damages resulting from the wrong. It is evident that a different rule would lead to a multiplicity of actions and produce injustice and confusion. It is in strict harmony with the rule which prevails, and has long prevailed, in cases where property is seized under the right of eminent domain.

  &#42;   &#42;   &#42;   &#42;   &#42;   &#42;   &#42;

"The presumption of the permanency of the grade once established is the only reasonable and defensible one, and it is, therefore, just to apply to such cases the rule which governs in cases where the improvement is permanent. It is not reasonable to apply the rule which prevails in cases where a nuisance is created which is capable of abatement or removal and is not a thing of a permanent nature. The general rule is that where the act complained of is of a permanent nature, all the damages must be recovered in one action, and this rule should govern in actions for injuries resulting from a change of grade."

Applying the principle, the entire damage for plaintiff's injury is recoverable in the present action, and from this it follows that the proper and only feasible rule for admeasuring the damage will be the impaired market value of the property arising, and which is likely to arise by reason of the negligence established.

We were referred to several decisions to the effect that the impairment of market value was not the correct rule, but rather the diminished value of the lot caused by subsidence of soil or other injury which has occurred: *Gilmore v. Dincoll,* 122 Mass., 199; *Magguire v. Grant,* 25 N. J. L., 356; but these cases were actions for wrongful withdrawal of lateral support by an adjoining proprietor, which did not necessarily involve the question of negligence, nor permit the award of prospective damages. Even in actions of that character, there are authorities to the effect that the correct rule is the impaired market value of the lot, the estimate to include prospective damages. See note to *Kansas City R. R. v. Schwake, supra,* in 68 L. R. A., 702-703. But when, as in this case, the recovery is for negligence arising from an injury permanent in its character and

under color of statutory authority, the true rule should undoubtedly be the impaired market value, to be determined on consideration of the entire damages arising from the wrong—past, present and prospective. Taking the charge as a whole, and in connection with the special instructions given at the request of the defendant, this was the principle laid down for the guidance of the jury in the present case, and these exceptions of the defendant are also overruled.

There were several other objections made to rulings of the court on questions of evidence. One of them was pointed to the admission of evidence as to the cost of a retaining wall. Both plaintiff and defendant seem to have offered testimony on that question, and we think the evidence was properly admitted. As we have endeavored to show, the general and better rule for the admeasurement of damages in these cases is the impaired value of claimant's lot by reason of defendant's negligence; but the cost of a retaining wall should, we think, be received as a fact relevant to the inquiry, and under some circumstances might be adopted as determinative, particularly when such cost is reasonable and operates in restriction of the amount recovered.

As we have said in *Bowen v. King, supra,* "A well-recognized restriction applying in case of tort or contract, and as to both elements of damages (direct and consequential), is to the effect that the injured party must do what he can in the exercise of reasonable care and diligence to avoid or lessen the consequences of the wrong, and for any part of a loss incident to such failure no relief can be had"; and a proper application of this principle in such cases might require that this cost of retaining wall should be accepted as controlling. See note to 68 L. R. A., 706, citing *Kopp v. R. R.,* 41 Minn., 310; *Richardson v. Webster City,* 111 Iowa, and other authorities. And the case in our own Reports of *Meares v. Wilmington, supra,* gives clear indication that the costs of such a wall, if reasonable, might under given conditions be accepted and acted on as the correct estimate in determining the damage.

Defendant excepted further that several witnesses were allowed to give their opinion as to the amount the lot was damaged. Evidence of this character from witnesses who have had personal observation of relevant facts and conditions, and whose opinion is calculated to aid the jury to a correct conclusion, is coming to be more and more regarded as competent, and its reception has been sanctioned and approved in several recent decisions of the Court. *Lumber Co. v. R. R.,* 151 N. C., 220; *Wilkinson v. Dunbar,* 149 N. C., 20; *Davenport v. R. R.,* 148

N. C., 287; *Tire Setter Co. v. Whitehurst,* 148 N. C., 446; *Taylor v. Security Co.,* 145 N. C., 385.

Again, defendant excepted that a witness for plaintiff, testifying to the value of the lot in question, was allowed to say that the tax assessors were accustomed to assess such property at about one-third of its true value. This as an independent proposition would not be regarded as competent testimony, but on cross-examination of this same witness defendant's counsel had brought out the statement that the property in question had been assessed for taxation at a much lower value than plaintiff claimed, and this statement of the witness on redirect examination became in this way, we think, a relevant circumstance; certainly it will not be held for reversible error.

Considering the entire matter, we are of opinion that the cause has been carefully and correctly tried, and that no reversible error appears in the record. The judgment is, therefore, affirmed.

No error.