CHARLIE LEE LEONARD v. THE PACIFIC MUTUAL LIFE INSURANCE
COMPANY OF CALIFORNIA.

(Filed 13 October, 1937.)

**1. Trial § 22b—**

Upon motion to nonsuit, all the evidence tending to support plaintiff's ·cause of action is to be considered in the light most favorable to him, and he is entitled to every reasonable intendment thereon and every reasonable inference therefrom.

**2. Insurance § 34a—Definition of total disability.**

Total disability, within the meaning of a disability clause in a life insurance policy, is such disability as prevents insured from performing with reasonable continuity the reasonable and essential duties of his usual employment, or of any other occupation which he is reasonably qualified physically and mentally to pursue, under all the circumstances, and the ability to do odd jobs of a comparatively trifling nature does not preclude recovery.

**3. Evidence § 46—**

Nonexpert witnesses with knowledge of insured may give opinion testimony as to insured's ability to engage in work, in an action on a disability clause in a life insurance policy.

**4. Evidence § 49—**

Under the facts and circumstances of this case, nonexpert opinion evidence as to insured's ability to engage in work *held* not to impinge rule that witnesses may not give opinion on the exact question presented for the jury's determination.

**5. Appeal and Error § 39d—**

The admission of certain testimony over objection cannot be held prejudicial when other testimony of like effect is admitted without objection.

**6. Insurance § 34a—Evidence that insured was near-sighted held competent to show inability to pursue other occupations.**

Insured, a farmer, instituted this action on a disability clause in a policy of insurance on his life. *Held:* Evidence that insured was near-sighted is competent for the purpose of showing that he could not within a reasonable time equip himself to pursue any other occupation requiring good eyesight, and such evidence need not be supported by allegation in the pleading or proof of claim, since such fact is not relied on as a cause of disability.

**7. Insurance § 37—Statement of court, when taken with subsequent correct instructions, held not prejudicial to insurer.**

In this action on a disability clause in a life insurance policy, a juror, in response to an inquiry from the court, stated he understood from the instructions that insured would be disabled if he could not perform the work of his usual occupation. The court stated that this was substantially correct, but the court then charged the jury correctly on this aspect of the case. *Held:* Not error.

APPEAL by defendant from *Frizzelle, J.,* and a jury, at April Term, 1937, of NASH. No error.

This is an action brought by plaintiff to recover of the defendant a certain sum of money alleged to be due him from defendant in violation of its contract with plaintiff. The defendant denied liability.

The plaintiff was the holder of a life and disability policy of insurance, No. 557714, in the defendant company, dated 23 October, 1924. This insurance policy contained total and permanent disability benefits, which said total and permanent disability benefits were substantially in the usual form, and provided that, should the insured, before the anniversary of the policy nearest the date on which the insured should attain the age of 60 years, and while policy is in full force and no premium thereon in default, become permanently and totally disabled as defined by the policy, the company, subject to the conditions set forth in said policy, will waive the payment of all future premiums and pay the insured a monthly income of $30.00, etc.

The provisions in controversy are as follows: "Permanent total disability, as used herein, is defined to mean: (1) Disability caused by accidental bodily injury or disease which totally and permanently prevented the insured from performing any work or engaging in any occupation or profession for wages, compensation, or profit; or (2) disability caused by accidental bodily injury or disease which totally prevents the insured from performing any work or engaging in any occupation or profession for wages, compensation, or profit, and which shall have totally and continuously so prevented the insured for not less than ninety (90) days immediately preceding the date of receipt of due written proof thereof."

LEONARD *v.* INSURANCE CO.

The plaintiff made demand and filed proofs on or about 12 June, 1934, upon forms furnished by defendant for total and permanent disability, in accordance with the terms of the policy. This the defendant admitted, but denied liability on the ground that plaintiff had not suffered total and permanent disability, according to the provisions of the policy. It was admitted by the defendant that the premiums had been paid on the policy for about 10 years prior to this action. The plaintiff offered in evidence the policy.

The testimony of plaintiff was to the effect that he was reared on a farm and engaged in farming, and did nothing else, and had no other kind of business. In January, 1934, he suffered a soreness in his shoulder, thigh, and hands. This soreness was coming on two years before January, 1934. He got so, about 18 January, 1934, that he could not work at all. He was nervous, could not eat well, and had an inflammation of the genital organs. He could not sleep at night and his hands were affected. His heart ran too fast on exertion. He went to Park View Hospital in Rocky Mount, N. C., about 21 January, 1934. He was there examined by Dr. C. T. Smith, who prescribed medicine. At that time he was in a very distressing condition and suffering very much. His weight in 1933 and 1934 was 156 to 164 pounds. When he went to Dr. Smith he weighed 150 pounds. At the time of the trial of this cause he weighed 137 pounds. Dr. Smith pronounced his disease as neurasthenia. He suffered from indigestion. He has not been able to do any work since about the middle of January, 1934. Along after January, 1934, and as he felt a little better, he tried from time to time to work, but found that he had to, on account of his condition, give up all work. He had charge of his mother's farm prior to 1934. After his disability on 18 January, 1934, he had to turn the farm over to his brother, Clyde Leonard, and he has been unable to do any work except the little things he had tried to do and failed since that time. The plaintiff has not been able to earn any amount of money from his own labor since January, 1934, and he has no income from any source except what comes from his mother's farm.

Dr. C. T. Smith, a witness for the plaintiff and who is admitted to be an expert, testified and gave the history of his examination of the plaintiff, and stated that in his opinion Mr. Charlie Lee Leonard, when examined by him in 1934, was not able to carry on with reasonable continuity the essential duties of a farmer.

Dr. A. L. Daughtridge, who was also admitted to be a medical expert, gave as his opinion that the plaintiff could not follow with reasonable continuity the essential duties of a farmer.

The plaintiff was corroborated as to his condition by many witnesses.

The preliminary particulars of total disability to defendant, filed 9 July, 1934, was introduced by plaintiff and was not objected to by

defendant. The material question and answer were: "Have you been totally disabled and continuously prevented from performing any work or engaging in any occupation or profession for wages, compensation, or profit? If so, on what date did such disability begin? 18 January, 1934. Are you still so disabled? Yes."

The statement of plaintiff's attending physician, Dr. C. T. Smith, to defendant, filed 11 July, 1934, was introduced in evidence by the plaintiff. This was not objected to by defendant. The questions and answers were: "Has he been totally disabled and continuously prevented from performing any work or engaging in any occupation or profession for wages, compensation, or profit? Unable to farm. If so, on what date did such disability begin? 21 January, 1934. Is he still so disabled? Yes. If he is now continuously totally disabled, will such disability, in your opinion, be permanent? . . ."

The issues submitted to the jury, and their answers thereto, were as follows:

"1. Did the plaintiff, on or about 18 January, 1934, become totally and permanently disabled, and has he since that time remained so, so that he was and is totally and permanently prevented from performing any work or engaging in any occupation or profession for wages, compensation, or profit, as alleged in the complaint? Ans.: 'Yes.' ·

"2. What amount, if any, is the plaintiff entitled to recover of the defendant? Ans.: '$1,275.23.' "

The court below rendered judgment on the verdict. The defendant made numerous exceptions and assignments of error and appealed to the Supreme Court. The material ones will be considered in the opinion.

*I. T. Valentine for plaintiff.*
*J. M. Broughton and Wm. H. Yarborough, Jr., for defendant.*

CLARKSON, J. The defendant introduced no evidence and at the close of plaintiff's evidence made a motion in the court below for judgment as in case of nonsuit. The court below overruled the motion, and in this we can see no error. The evidence which makes for plaintiff's claim, or tends to support his cause of action, is to be taken in its most favorable light for the plaintiff, and he is entitled to the benefit of every reasonable intendent upon the evidence, and every reasonable inference to be drawn therefrom.

In *Bulluck v. Ins. Co.,* 200 N. C., 642, *Brogden, J.,* after citing many authorities, says, at p. 646: "The reasoning of the opinions seems to indicate that engaging in a gainful occupation is the ability of the insured to work with reasonable continuity in his usual occupation, or in such an occupation as he is qualified physically and mentally, under

all the circumstances, to perform substantially the reasonable and essential duties incident thereto. Hence, the ability to do odd jobs of comparatively trifling nature does not preclude recovery. Furthermore, our decisions, and the decisions of courts generally, have established the principle that the jury, under proper instructions from the trial judge, must determine whether the insured has suffered such total disability as to render it 'impossible to follow a gainful occupation.' "

The court below, in its charge, quoted the above excerpt from the *Bulluck case, supra,* which has been many times approved by this Court. *Misskelley v. Ins. Co.,* 205 N. C., 496 (506-7); *Smith v. Assurance Society,* 205 N. C., 387; *Fore v. Assurance Society,* 209 N. C., 548; *Blankenship v. Assurance Society,* 210 N. C., 471.

This case was before this Court—*Leonard v. Ins. Co.,* 209 N. C., 523. *Schenck, J.,* writing the opinion for the Court, said, at p. 524: "The plaintiff introduced his evidence and at the conclusion thereof the defendant moved to dismiss the action and for judgment as of nonsuit, which motion was allowed, and from judgment entered accordingly the plaintiff appealed, assigning errors. . . . The sole question presented by this appeal is whether the plaintiff's evidence was sufficient to be submitted to the jury upon the question of his permanent total disability as defined in the policy."

The facts are therein set forth similar to those in the present case. This Court reversed the judgment of nonsuit, citing the *Bulluck case, supra,* and other cases.

We think it was competent to admit opinion evidence of nonexpert witnesses to testify as to the ability of plaintiff to engage in work.

In *Keller v. Furniture Co.,* 199 N. C., 413 (417), it is said: "The testimony of these witnesses did not involve a question of science or a conclusion to be drawn from a hypothetical statement of facts; it was elicited as a matter within their personal knowledge, experience, and observation. The exception to the general rule that witnesses cannot express an opinion is not confined to the evidence of experts testifying on subjects requiring special knowledge, skill, or learning; it includes the evidence of common observers testifying to the results of their observation. *Britt v. R. R.,* 148 N. C., 37; *Marshall v. Telephone Co.,* 181 N. C., 292." *Bulluck v. Ins. Co., supra,* pp. 646-7.

On the facts and circumstances of this case, we do not think the evidence complained of by defendant is of such a nature that impinged the rule that it was the exact question for the jury to determine, at least it was not prejudicial, as there was other evidence of like effect to which no objection was made by defendant.

The evidence of plaintiff which defendant objected to, as to the nearsightedness of plaintiff, we think was competent under the facts and

circumstances of the case. This was admitted by the court, for the purpose of showing that the plaintiff could not within a reasonable time equip himself to be a bookkeeper, conduct a store, or do anything else that required good eyesight; that the fact that the plaintiff was nearsighted was undoubtedly in the contemplation of the parties at the time the policy sued on was executed and delivered. It was wholly unnecessary to refer to the near-sightedness of the plaintiff in his proof of claim, in his specifications of disability, or anywhere else except in his evidence. He was not required to allege this, since his near-sightedness was not relied upon as the cause of his disability, but merely to show that he could not equip himself to follow some other suitable occupation. The near-sightedness of the plaintiff did not tend to excite sympathy or awaken prejudice. A casual look at the plaintiff, no doubt, at the time the policy was issued, or at the time of the trial, would disclose the fact that he was near-sighted.

The court charged with care the law applicable to the facts, and fully complied with C. S., 564. There appears in the record the following: "(By the court) Is there any further instruction that you gentlemen desire on any aspect of the case? . Mr. Marvin Robbins, one of the jurors, replied as follows: 'We understood in your charge that if in our opinion the plaintiff was not able to carry on the farm duties which he had been accustomed to carry on that he would be considered disabled, but that in the last analysis we were to interpret this contract as we saw it. Is that correct?' (By the court) 'Well, substantially.'" The defendant contends that this was error, but the court below went further, and charged the jury correctly as follows: "I instructed you, I think, that if you should be satisfied from the evidence, and by its greater weight, that the plaintiff had become disabled to such an extent that he could not carry on his farming pursuit with reasonable continuity, performing the usual and ordinary duties incident thereto, or if you should not so find, but should find that the plaintiff is disabled so that he could not engage in some similar work, or some work for which he was physically and mentally qualified under all the circumstances, and pursue it with reasonable continuity, earning for himself wages, profit, or compensation bearing some reasonable proportion to the earnings he earned in his former occupation, that would constitute a total disability within the meaning of the policy and within the meaning of the law of the State; that the mere fact that the plaintiff could perform some odd jobs of a trifling or inconsequential nature, either in the occupation of farming or some other occupation for which he was qualified mentally and physically, would not preclude a recovery. Does that make any clearer the statements of law applicable? . . . The only question involved in this action is whether or not the plaintiff was totally disabled, perma-

nently and totally disabled, within the period from 25 June, 1934, to the trial of this action, in the amount involved, which I told you yesterday under the stipulation between the parties is the benefit provided for, or $30.00 per month, and the premiums which have been paid by the plaintiff on the policy from the period beginning on 25 June, 1934, to the present time."

On the whole trial, we see no prejudicial or reversible error.

No error.